# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| **WILLIAM THOMAS WILSON,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:19CV1089 |
| | ) |
| **ANDREW SAUL,** | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff William Thomas Wilson brought this action to obtain review of a final decision of the Commissioner of Social Security denying his claim for supplemental security income. The Court has before it the certified administrative record and cross-motions for judgment.

### I.  PROCEDURAL HISTORY

In late 2015, Plaintiff filed an application for supplemental security income, alleging a disability onset date of December 2, 2011. (Tr. 19, 180-187.) The application was denied initially and upon reconsideration. (Tr. 118-122, 127-131.) After a hearing, an Administrative Law Judge ("ALJ") determined on September 14, 2018 that Plaintiff was not disabled under the Act since December 2, 2015, the date the application was protectively filed.[1] (Tr. 19-40,

---

[1] The ruling could not extend to earlier than the application date because supplemental security income is not payable prior to the month following the month in which the application was filed, irrespective of the claimant's alleged onset date. *See* 20 C.F.R. § 416.335.

56-82.) The Appeals Council denied a request for review, making the ALJ's decision the final decision for purposes of review. (Tr. 1-6.)

## II. STANDARD FOR REVIEW

The scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The issue before the Court is not whether Plaintiff is disabled but whether the finding that he is not disabled is supported by substantial evidence and based upon a correct application of the relevant law. *Id.*

## III. THE ALJ'S DECISION

The ALJ followed the well-established sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. § 416.920. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since the application date of December 2, 2015. (*Id.* at 21.) The ALJ next determined at step two that Plaintiff had the following severe impairments: gout, kidney disease, atrial fibrillation, degenerative disc disease, lumbar disc disease with radiculopathy, chronic obstructive pulmonary disease, obesity, depressive disorder, anxiety disorder, and personality disorder. (*Id.*) At step three, the ALJ found that

Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1. (*Id.* at 22.)

The ALJ next set forth Plaintiff's Residual Functional Capacity ("RFC") and determined that he could perform light work

> except he can only occasionally climb stairs, balance, stoop, kneel, crouch, and crawl; he cannot climb ladders and similar devices; he cannot work in hazardous environments; he cannot work in exposure to high concentrations of dust, fumes, gases, and other pulmonary irritants; he cannot work in exposure to cold temperatures; he can do simple, routine, and repetitive tasks only; and he cannot do tasks requiring more than occasional public contact.

(Tr. 24.) At step four, the ALJ determined that Plaintiff could not perform any past relevant work. (Tr. 32.) At step five, the ALJ determined that there were other jobs in the national economy that Plaintiff could perform. (Tr. 33.) Consequently, Plaintiff was found not to be disabled under the Act. (Tr. 34.)

## IV. ISSUES AND ANALYSIS

Plaintiff first challenges the ALJ's evaluation of the medical opinions of the non-examining state agency psychological consultants. (Docket Entry 12 at 8-16.) Plaintiff next challenges the ALJ's evaluation of his congestive heart failure and lower extremity edema. (*Id.* at 16-19.) As explained below, neither argument has merit.

### 1. Non-examining State Agency Consultants

Plaintiff first challenges the ALJ's evaluation of the medical opinions of the non-examining state agency consultants. (*Id.* at 8-16.) An ALJ is obliged to evaluate and weigh each medical opinion in the record. 20 C.F.R. § 416.927(c). The treating source rule requires an ALJ

3

to give controlling weight to the opinion of a treating source regarding the nature and severity of a claimant's impairment. 20 C.F.R. § 416.927(c)(2). The rule also recognizes that not all treating sources or treating source opinions merit the same deference. The nature and extent of each treatment relationship appreciably tempers the weight an ALJ affords an opinion. *See* 20 C.F.R. § 416.927(c)(2)(ii). A treating source's opinion, like all medical opinions, deserves deference only if well-supported by medical signs and laboratory findings and consistent with the other substantial evidence. *See* 20 C.F.R. § 416.927(c)(2)-(4); SSR 96-2p, 1996 WL 374188, at *1 (July 2, 1996). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590. Where an opinion is not entitled to deference under the treating physician rule, the ALJ still must apply several factors to determine the weight the opinion should be afforded. 20 C.F.R. § 416.927(c)(2). Moreover, "[a]n ALJ is not required to adopt every opinion in a non-examining medical expert's report, even when according the report great weight overall." *See Bacnik v. Colvin*, No. 1:12-CV-801, 2014 WL 3547387, at *4 n.7 (M.D.N.C. July 17, 2014). Nevertheless, "when an ALJ does not include certain limitations in the RFC from a source given significant weight, the reviewing court must remain able to ascertain from the ALJ's decision *why* the ALJ omitted those limitations." *See Bond v. Saul*, No. 1:19CV901, 2020 WL 4606412, at *5 (M.D.N.C. Aug. 11, 2020) .

In this case, state agency psychologist Jacquelyn Harrison, PhD, reviewed the record and assessed Plaintiff's RFC in February of 2016. (Tr. 91.) She found Plaintiff's affective disorder and anxiety (Tr. 90) limited him to understanding, remembering, and carrying out

4

very short and simple instructions. (Tr. 94-95.) Dr. Harrison concluded that Plaintiff could interact with coworkers, supervisors, and the public in a "minimum social demand workplace setting." (Tr. 95-96.) She concluded too that Plaintiff needed a low-stress workplace. (Tr. 96.) A few months later, Ken Wilson, PsyD, concluded that Plaintiff could understand and follow instructions for work-related tasks and could maintain attention and concentration for two hours at a time. (Tr. 111-13.) Dr. Wilson also found that Plaintiff could work in a low-stress workplace setting. (Tr. 113.) And, unlike Dr. Harrison who concluded that Plaintiff was limited to very short and simple instructions, Dr. Wilson concluded that Plaintiff had, "no obvious deficits in [his] ability to understand and follow instructions" and was "capable of carrying out instructions." (Tr. 112.)

The ALJ attributed "significant" weight to both these opinions, stating that

> In addition to the objective medical evidence, the Administrative Law Judge has considered the opinion evidence in the record. . . . The Administrative Law Judge . . . considered the assessments of the State agency psychological consultants, who concluded that the claimant can perform simple work tasks with limited social interaction (Exhibits 1A; 3A). The undersigned gives these assessments significant weight because the State agency psychological consultants reviewed the available record, are experts in their field that used their knowledge of the disability program in assessing the claimant's functional limitations, and their opinions are generally consistent with the medical evidence. Accordingly, the undersigned accounted for these limitations in the above stated residual functional capacity statement.

(Tr. 29.) The ALJ then considered these opinions, and the remainder of the record, and concluded that Plaintiff could perform simple, routine, and repetitive tasks only and he cannot do tasks requiring more than occasional public contact. (Tr. 24.)

5

Plaintiff now contends that the ALJ erred by giving "significant weight" to the opinions of the non-examining state agency psychologists while omitting from the RFC determination (and the corresponding hypothetical to the VE) limitations those psychologists identified, including (1) a limitation involving interactions with coworkers and supervisors, (2) a limitation involving exposure to stress, (3) a limitation involving concentration, (4) and a limitation involving "very short, simple instructions." (Docket Entry 12 at 8-16.) Alternatively, Plaintiff contends that the ALJ erred by not explaining in his decision in a manner susceptible to judicial review why he omitted the four restrictions mentioned above from the RFC determination. (*Id.*) As explained in greater detail below, both arguments are without merit because the Court is able to determine *why* these four restrictions were omitted from the mental RFC determination and the ALJ's reasoning in this regard is supported by substantial evidence.

### i. Interaction with Co-Workers and Supervisors

The ALJ's decision to omit any limitation in Plaintiff's ability to interact with co-workers and supervisors was supported by substantial evidence and is susceptible to judicial review. For example, on November 23, 2015, Plaintiff's social worker asked him about social behavior and he indicated no problems, including no problems getting along with authority figures, nor did he annoy others, feel easily annoyed, or disregard the rights of others. (Tr. 323-24.) Instead, he commented that he did not get "too angry" but that his wife said he "get[s] a little snappy." (Tr. 324.) The ALJ pinpoint cited to this portion of the social worker's report and observed that "[i]n late November of 2015, the claimant was referred by his primary care provider for evaluation of stress and anxiety and was diagnosed with major depressive disorder

6

and generalized anxiety disorder (Exhibit 3F/1, 3)." (Tr. 25, referencing Tr. 323, 325.) Given Plaintiff's own admissions, and the ALJ's pinpoint citation to those admissions in the administrative decision, the Court can ascertain from the ALJ's decision why additional social restrictions related to supervisors and co-workers (such as those proposed by Dr. Harrison) were not included in the RFC and the hypothetical to the vocational expert.[2] From this, the Court can also determine that the ALJ's decision was well-supported.

Moreover, even assuming the ALJ erred here by failing to include additional social limitations in the RFC (which is not the case for the reasons set forth above), any error would be harmless because the jobs the ALJ concluded that Plaintiff could perform do not require significant social interactions. In fact, the Dictionary of Occupational Titles ("DOT") descriptions of the jobs identified by the VE list interaction with "People" as being "Not Significant."[3] *See, e.g.*, *Wiles v. Colvin*, No. CV 9:14-2766-TLW-BM, 2015 WL 9684908, at *6 (D.S.C.

---

[2] The ALJ's decision also makes it clear that he relied in part on statements made by Plaintiff's wife in assessing the RFC. (Tr. 25, 30.) Plaintiff's wife indicated that her husband had no problems getting along with others and specifically stated that he "[g]ets along fine" with authority figures, including bosses. (Tr. 220-21). She stated that an employer has never fired or laid off her husband because of problems getting along with other people. (Tr. 221.) After specifically considering Plaintiff's wife's report, the ALJ concluded that "the claimant's limitations are not as severe as reported and that the claimant is capable of work as reflected in the above stated residual functional capacity." (*Id.* at 30.) Reliance on the aforementioned statements therefore provide additional substantial evidence in support of the ALJ's decision to omit additional social restrictions from the RFC. Moreover, even assuming the ALJ did err in his assessment of Plaintiff's wife's report (which is not the case) the error was harmless in light of the other substantial evidence discussed above that supports the ALJ's decision to forego any additional social limitations in the RFC.

[3] *See* Small Parts Assembler, DOT # 706.684-022, 1991 WL 679050 (4th Ed. Rev. 1991) ("People: 8 - Taking Instructions-Helping N - Not Significant"); Garment Sorter, DOT # 222.687-014, 1991 WL 672131 (4th Ed. Rev. 1991) (same); Document Specialist, DOT # 249.587-018, 1991 WL 672349 (4th Ed. Rev. 1991) (same); Toy Stuffer, DOT # 731.685-014, 1991 WL 679811 (4th Ed. Rev. 1991) (same).

Aug. 31, 2015); *Able v. Colvin*, No. 1:14CV1078, 2016 WL 1229086, at *3 (M.D.N.C. Mar. 28, 2016). For all these reasons, Plaintiff's objection should be overruled.

### ii. Stress Level

The ALJ's decision to omit any stress limitation in the RFC is also susceptible to judicial review and supported by substantial evidence. For example, in late November of 2015, the claimant reported to his social worker that not working was a primary stressor (Tr. 335), which would resolve if he returned to the workforce. The ALJ specifically pinpoint cited to this page in the record in discussing Plaintiff's mental health (Tr. 25 referencing Tr. 335) thereby indicating that he was relying on it in support of the RFC determination. Additionally, the ALJ also discussed that Plaintiff reported to his primary care medical provider in June 2016 that his mental condition was "improving": his energy was normal, his panic attacks had stopped, and his stressors were "stable." (Tr. 26, 568.) His primary care medical provider determined that he was "doing well with current treatment" (Clonazepam) (Tr. 568), and Plaintiff reported no need for therapy (Tr. 26, 566-67). It is therefore clear that the ALJ relied upon substantial evidence in declining to adopt any additional stress limitations proposed by the non-examining state agency psychologists.

### iii. Concentration

The ALJ's decision to omit any additional restrictions in the RFC related to Plaintiff's ability to concentrate was also supported by substantial evidence and is susceptible to judicial review. Dr. Wilson—a non-examining state agency consultant who the ALJ afforded significant weight—found that Plaintiff "may have some occasional lapses in sustained

8

concentration," but such lapses will not prevent him from "maintain[ing] attention & concentration for 2 hours at a time as required for the completion of work-related tasks." (Tr. 112.) Pursuant to Social Security Ruling 96-9p, 1996 WL 374185, at *6 (July 2, 1996), a normal workday includes a morning break, a lunch period, and an afternoon break, at approximately two-hour intervals. Therefore, Dr. Wilson did not find concentration difficulties that would interfere with Plaintiff's ability to perform simple, routine, repetitive tasks for a full workday, with the normal breaks. The ALJ's decision to omit additional mental restrictions to account for Plaintiff's difficulties in concentration was well-supported.[4]

### iv. Very Short Simple Instructions

The ALJ's decision to omit from the RFC a limitation to very short, simple instructions was also supported by substantial evidence and is susceptible to judicial review. Dr. Wilson, a non-examining state agency consultant whom the ALJ gave significant weight, concluded that Plaintiff had, "no obvious deficits in [his] ability to understand and follow instructions" and that his symptoms were "not so severe as to impair [his] ability to understand and follow instructions for work-related tasks." (Tr. 29, 112.) This provides substantial evidence, and an adequate explanation susceptible to judicial review, as to why the ALJ reasonably omitted a very short and simple instructions limitation from his mental RFC determination and instead

---

[4] Plaintiff is mistaken when he argues that in the Fourth Circuit "limiting a claimant to simple, routine tasks does not account for [a claimant's] limitations in concentration, persistence, and pace" (Docket Entry 12 at 13). *See Shinaberry v. Saul*, 952 F.3d 113, 121-22 (4th Cir. 2020) ("[W]e did not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC[.]"). Here, Dr. Wilson specifically found that the claimant's "occasional lapses in sustained concentration" do not interfere with his ability to perform full-time work on a sustained basis. (Tr. 112.)

9

limited Plaintiff to the performance of simple, routine, and repetitive tasks.[5]

Moreover, as noted above, the ALJ gave significant weight to both non-examining state agency psychologists, one of whom limited Plaintiff to very short simple instructions (Dr. Harrison) and one who found no deficits in his ability to follow instructions (Dr. Wilson). The ALJ reconciled these opinions by considering all of the evidence of record and ultimately limiting Plaintiff to performing simple, routine, and repetitive tasks and only occasional public contact. Plaintiff has failed to demonstrate that the ALJ's reconciliation of the evidence was a material error. This contention should be rejected.[6]

### v. Other Considerations

The ALJ also pointed to additional factors that support his administrative decision of non-disability overall and his mental RFC determination in particular. First, the ALJ pointed out that Plaintiff could carry out a number of daily activities. (Tr. 26, 30-31, 70, 72-73, 212, 216-219, 463-64, 495.) For example, Plaintiff was able to prepare meals, do housework, read things on the internet, renew his driver's license, drive, mow with a riding lawnmower, shop, and help to take care of his two children. (*Id.*) Second, the ALJ correctly pointed out that in February of 2016 Plaintiff stated during a consultative examination that he did not think his mental issues kept him from working. (Tr. 26, 463.) Third, the ALJ also emphasized that he

---

[5] The Court notes too that elsewhere in their evaluations, both Drs. Harrison and Wilson concluded that Plaintiff could perform simple, routine, repetitive tasks. (Tr. 91, 107.)

[6] Because the ALJ's decision to omit a limitation to very short, simple instructions is well-supported and susceptible to judicial review, the Court need not resolve Plaintiff's contention that "[i]f the ALJ had limited [Plaintiff] to very short, simple instructions . . . [he] likely would be unable to perform any of the jobs the ALJ relied on at step five . . .". (Docket Entry 12 at 13.)

10

did not base his RFC finding on a "single factor," but rather, he viewed "in combination" the "medical history" and "examination findings," in conjunction with the opinion evidence, in assessing Plaintiff's RFC. (Tr. 31.) Fourth, it is also clear from the ALJ's review of the medical opinions that no doctor opined that Plaintiff suffers from disabling mental limitations.[7] (Tr. 29-31.) Fifth, the ALJ also accurately pointed out that Plaintiff testified that he stopped working in 2007 to stay home with his autistic child, not due to medical reasons. (Tr. 31, 67.) While each of these considerations individually may not be dispositive in and of itself, they are not irrelevant. All of this bolsters the conclusion that the ALJ's mental RFC determination is both susceptible to judicial review and supported by substantial evidence.

### vi. Plaintiff's Arguments to the Contrary Are Not Persuasive.

Plaintiff raises a number of additional arguments as to why he should prevail here, none of which are persuasive. Plaintiff faults the Commissioner for offering post-hoc reasons to affirm the ALJ's decision that are not contained in that decision itself. (Docket Entry 15 at 2.) Plaintiff also faults the Commissioner for relying on evidence discounted by the ALJ (*Id.* at 3-4) and further faults the Commissioner for not explaining why he did not adopt all of the limitations proposed by Drs. Harrison and Wilson (*Id.* at 5-6). These contentions largely challenge arguments raised in the Commissioner's brief. However, the question here is not the quality of the Commissioner's brief, but rather whether the ALJ's decision is supported by

---

[7] The Court agrees with Plaintiff's observation that "[t]here is no requirement that [he] must be disabled by his mental impairments for them to be accounted for in the RFC." (Docket Entry 15 at 4.) However, as explained herein, the ALJ gave good reasons, supported by substantial evidence and which are susceptible to judicial review, in accounting for Plaintiff's mental limitations in the RFC. Consequently, Plaintiff's observation is true, but not particularly relevant here.

substantial evidence and is susceptible to judicial review. As explained in detail above, the ALJ provided a logical bridge between his findings of fact and conclusions of law and also supports his mental RFC determination with substantial evidence. Consequently, Plaintiff's arguments are not persuasive and his challenge to the mental RFC determination should be rejected.

### 2. Congestive Heart Failure with Edema

Plaintiff next faults the ALJ for not fully accounting for his congestive heart failure and lower extremity edema in assessing the RFC. (Docket Entry 12 at 17.) A review of the ALJ's decision demonstrates that Plaintiff's cardiac condition and resulting leg swelling were important considerations in reducing his RFC to light work with significant postural limitations. Consequently, this argument is also unpersuasive.

The "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." *Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981). The "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." *Hines*, 453 F.3d at 562-63. An ALJ need not discuss every piece of evidence in determining the RFC. *See, e.g.*, *Matney v. Colvin*, No. 1:09-CV-229, 2013 WL 1788590, *3 (M.D.N.C. April 26, 2013). What is required is "an accurate and logical bridge from the evidence to [the] conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000); *Matney*, 2013 WL 1788590, at *3.

12

Case 1:19-cv-01089-LCB-JLW   Document 16   Filed 10/27/20   Page 12 of 17

Here, the ALJ repeatedly discussed Plaintiff's cardiac condition and edema throughout the decision.[8] More specifically, the ALJ discussed Plaintiff's allegations regarding his heart problems and fluid retention. (Tr. 25.) The ALJ addressed the treatment records from before his application filing date, which showed cardiac testing in March 2015 that revealed a normal left ventricle systolic function with an ejection fraction of 67%, mild left ventricular hypertrophy, normal right ventricle size and systolic function, and a dilated right atrium. (Tr. 25, 405-19.) The ALJ discussed that Plaintiff, nevertheless, complained of leg swelling and shortness of breath with exertion, for which Plaintiff's doctors prescribed Lasix. (Tr. 25, 351, 353.) Plaintiff reported that the treatment helped with the leg swelling, but not with the shortness of breath. (Tr. 25, 434.) However, diagnostic imaging of his heart was normal so his cardiologist suspected that his continued symptoms were related to pulmonary conditions (Plaintiff is a long-time smoker). (Tr. 25, 351, 441; *see also* Tr. 720-24 (normal echocardiogram and chest x-ray)). Plaintiff's pulmonary condition was objectively confirmed by a pulmonary function test that demonstrated "a severe obstructive component" and treatment with an Advair bronchodilator resulted in a "noticeable improvement" of his shortness of breath. (Tr. 26, 427, 468.) By September 2016, Plaintiff reported that overall he felt well, except for rare,

---

[8] To the extent Plaintiff is contending that this matter should be remanded for further administrative proceedings due to an error at step two, this argument is unpersuasive. As explained herein, the ALJ considered all of Plaintiff's heart conditions, as well as his edema, and accounted for any resulting limitations in the RFC determination. *See, e.g.*, *Fuerst v. Colvin*, No. 1:15CV1054, 2016 WL 5957602, at *6 n. 8 (M.D.N.C. Oct. 13, 2016) ("Plaintiff contends that the ALJ erred by not finding issues with her hands or wrists a severe impairment at step two. However, any purported step two error here is harmless given the presence of other identified severe impairments at step two and the fact that the ALJ later evaluated Plaintiffs hand and wrist related issues elsewhere in his decision.") (citations omitted).

13

intermittent episodes of nonexertional left chest pain. (Tr. 26, 746.)

In 2017, Plaintiff complained of the return of leg swelling and shortness of breath, but admitted that he had stopped taking his medications two months previously. (Tr. 27, 557, 559.) He was admitted to the hospital and was administered Lasix and he experienced "rapid improvement in his symptoms." (Tr. 27, 769.) Thereafter, Plaintiff reported to his primary care medical provider that he was "doing better" and was experiencing no shortness of breath. (Tr. 27, 544.) A cardiac stress test was normal with no evidence of significant ischemia and normal myocardial perfusion. (Tr. 27, 798-99.) His medical providers determined that any residual shortness of breath "is likely a consequence of his ongoing smoking/COPD, and lack of compliance with CPAP." (Tr. 804.)

Follow-up with his cardiologist in November 2017 revealed that he was "doing better from a cardiac perspective" insofar as his dizziness and lower extremity improved (Tr. 27, 818), but a few months later, he reported shortness of breath and dizziness with exertion and intermittent chest discomfort (Tr. 28, 942-44, 1004). His edema had temporarily worsened because, again, he had not taken his Lasix for several months. (Tr. 28, 1004, 1033.) He was admitted to the hospital, at which time he was administered Lasix and experienced a "vigorous response," his electrocardiogram was normal, and he was discharged. (Tr. 28, 1017, 1041-42.) In sum, Plaintiff's heart condition was generally controlled by treatment and medication and when he took his Lasix, his edema demonstrated significant improvement and did not impose debilitating functional limitations.

Plaintiff's arguments to the contrary are not persuasive. He states he was hospitalized

14

twice for "volume overload" (Docket Entry 12 at 18), but in both cases, he was not taking his medication, and when he was administered the Lasix, he experienced a "rapid improvement" and a "vigorous response." Any residual symptoms were primarily related to other ailments. In addition to the treatment evidence, the ALJ also evaluated the opinion evidence and both doctors who issued opinions as to Plaintiff's functional limitations from his physical impairments concluded that he could perform at least light exertional work, with additional postural and environmental restrictions. Specifically, state agency medical consultant Melvin L. Clayton, M.D. concluded that Plaintiff could perform a limited range of light work (Tr. 109-11), and a second state agency medical consultant, Evelyn Jimenez-Medina, M.D., concluded that Plaintiff could perform a limited range of medium work (Tr. 92-94).

Beyond this, no doctor opined that Plaintiff needed to elevate his legs, and even the isolated treatment notes to which he points in support of his contention that this was necessary are not compelling. (Docket Entry 12 at 18 n. 130; *see* Tr. 447, 449 (mere subjective report that "feet better with elevating" and medical provider finding at this time that edema was "[m]ild" and "non pitting"), 641 (no mention of elevation), 804 (no mention of elevation, and to the contrary, doctor advised him to exercise)). Nor did Plaintiff testify at the hearing that he needed to elevate his legs. (Tr. 66-75.) As noted, the Lasix resolved his leg swelling.

In the end, the ALJ explained that "the medical evidence shows that the claimant experiences symptoms that cause work-related functional limitations," but not to the disabling level that he alleged. (Tr. 29.) The ALJ specified that Plaintiff's "numerous physical impairments restrict him to exertionally light work with some postural limitations." (*Id.*) The

15

ALJ explained that he gave the opinions of the state agency medical consultants "significant weight" and then limited Plaintiff to light work. (*Id.*) The ALJ also provided "additional postural and environmental limitations to account for his ongoing symptoms caused by pain, heart problems, and respiratory difficulties" (*id.*), which undercuts Plaintiff's argument that the ALJ did not account for his symptomatology after the state agency medical consultants issued their opinions. (Docket Entry 12 at 18-19.) The ALJ explained that his RFC finding was consistent with Plaintiff's degree of impairments ("mild to moderate in nature"), effectiveness of treatment ("generally appears to control the claimant's symptoms when he is compliant"), medical opinion evidence ("does not support the claimant's allegations of disabling symptoms and impairment"), and daily living activities ("modest range of activity," including household chores, mowing with a riding mower, driving, and shopping). (Tr. 31.)

Moreover, not only did the ALJ craft a light RFC that was consistent with the most restrictive medical opinion in the record, but he went even further by inquiring from the vocational expert whether jobs would be available in significant numbers if Plaintiff was reduced to sedentary work with all the other restrictions. (Tr. 34, 79.) The vocational expert testified that even if Plaintiff was reduced to sedentary work, he could perform the jobs of document specialist and toy stuffer, and those jobs were available in significant numbers. (Tr. 34, 79-80.) For all these reasons, Plaintiff's second objection has no merit.

### V. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is legally correct and supported by substantial evidence.

16

Accordingly, this Court **RECOMMENDS** that Plaintiff's Motion for Judgment (Docket Entry 11) be **DENIED**, Defendant's Motion for Judgment on the Pleadings (Docket Entry 13) be **GRANTED**, and the final decision of the Commissioner be upheld.

                                                                    _____
                                                                              Joe L. Webster
October 27, 2020                                              United States Magistrate Judge
Durham, North Carolina